OCT 26 2026 AM11:09
FILED - USDC - FLMD - JAX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

CASE NO. 3:26-cr-243-WWB-PDB

v.

SHAFIRA HOSEIN

# INFORMATION

The United States Attorney charges:

## COUNT ONE
## (Conspiracy)

### A. Introduction

At all times material to this Information:

1. Fidelity Information Services ("FIS") is a company located in Jacksonville, Florida.

2. FIS is a credit card issuing company that provides outsourced processing services to various financial institutions and state workforce agencies.

3. SHAFIRA HOSEIN resided in Coral Springs, Florida.

4. Unemployment Insurance ("UI") was a federal program that provided monetary benefits to eligible lawful workers. Although state workforce agencies ("SWAs") administered their respective UI programs, they did so in accordance with federal laws and regulations. UI payments (benefits) were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Each state set its own additional requirements for eligibility,

benefit amounts, and length of time benefits were paid. Generally, UI weekly benefit amounts were based on a percentage of one's earnings over a base period.

5. In March 2020, the President of the United States signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provided additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was also signed into law in March 2020. It expanded states' ability to provide UI benefits for many workers impacted by COVID-19, including for workers who were not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs: Pandemic Unemployment Assistance, Federal Pandemic Unemployment Compensation, and Pandemic Emergency Unemployment Compensation.

6. In some states, UI compensation funds are often issued in the form of a direct deposit into the claimant's designated bank account. In other states, when a claimant files his or her application, the claimant can opt to receive payments by debit card. The debit card will then be mailed to a physical address and/or P.O. Box designated by the claimant. SWAs often utilize financial intuitions such as Bank of America or U.S. Bank as their vendor to mail or ship the debit cards to the claimant. In addition, these financial institutions maintain account records, transaction records, and ATM transaction photographs among other items.

7. In some states, UI compensation debit cards are dispersed using third-party contractors. The third-party contractors provide customer service

representatives who intake unemployment insurance claims, inquiries, and other billing services associated with a SWA.

8. FIS was one such contractor that was responsible for ensuring that the beneficiaries of the UI program were able to receive their benefits by way of a pre-loaded debit card. To help facilitate this process, FIS hired customer service representatives who would be able to have access to the beneficiary's personal identification information in order to assist the customer in receiving their UI pre-loaded debit card, also known as an access device.

9. The term "access device" included any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that could be used alone or in conjunction with another access device to obtain money, goods, services, or any other thing of value, or that could be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

10. A credit card or debit card was an "access device." A credit card was a thin plastic card, usually 3-1/8 inches by 2-1/8 inches that contained identification information and authorized the person named on the card to make charges for which he or she was billed periodically by the card issuer. A debit card looked like and generally contained the same information as a credit card but immediately withdrew the money from the card holder's affiliated bank account.

11. Each credit or debit card account had a unique number issued to it. A

credit card or debit card account number was also an "access device." Credit or debit card issuers placed personal information on each card by physically stamping or embossing information such as the account number, the account holder's name, and the expiration date for the account. Credit or debit card issuers and financial institutions also programmed the magnetic strip on the back of the card with the account holder's account number, name, and the expiration date for the account.

12. The term "unauthorized access device" included any access device, including a credit card, debit card, credit card number, or debit card number that was lost, stolen, expired, revoked, canceled, or obtained with the intent to defraud.

13. The term "means of identification" included any name or number that could be used, alone or in conjunction with any other information, to identify a specific individual, including any access device. A credit card or debit card number was a means of identification.

**B. The Conspiracy**

14. From an unknown date, but at least as early as in or around February 2021, and continuing through in or about November 2021, in the Middle District of Florida, and elsewhere, the defendant,

SHAFIRA HOSEIN,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the United States, to commit an offense against the United States, that is, to knowingly and with intent to defraud, traffic in and use one or more unauthorized access devices during a one-year period, and by such conduct

obtained anything of value aggregating $1,000 or more during that period, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(2).

## C. Manner and Means of the Conspiracy

15. The manner and means by which the defendant and others sought to accomplish the object of the conspiracy included, among others:

a. It was part of the conspiracy that HOSEIN and other conspirators would and did access personal identifying information ("PII") of UI recipients through a FIS database.

b. It was part of the conspiracy that HOSEIN and other conspirators would and did transfer the access devices in the form of debit cards from eligible UI recipients to the HOSEIN's address where she and other conspirators would then be able to use the debit cards unlawfully.

c. It was further part of the conspiracy that HOSEIN and other conspirators would and did use, and attempt to use, said debit cards loaded with UI funds in the form of U.S. currency to withdraw the funds, in cash, from bank automated teller machines ("ATMs").

d. It was further part of the conspiracy that HOSEIN and other conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose and object of the conspiracy and the acts committed in furtherance thereof.

## D. Overt Acts

16. In furtherance of the conspiracy, and to effect the object thereof, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a. From February 2021 through November 2021, HOSEIN and other conspirators unlawfully re-issued approximately 904 access devices in the form of debit cards from legitimate UI beneficiaries to conspirators.

b. On or about July 9, 2021, HOSEIN used a debit card ending in 3919 that was re-routed to her by another conspirator, belonging to victim K.B., and withdrew $1,000 at an ATM machine in Florida.

All in violation of 18 U.S.C. § 371.

## COUNT TWO
## (Aggravated Identity Theft)

On or about November 10, 2021, in the Middle District of Florida, and elsewhere, the defendant,

SHAFIRA HOSEIN,

aided and abetted by others, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, a Social Security number and name, as detailed below, during and in relation to a federal violation of 18 U.S.C. § 371 and 1029(a)(2) (Conspiracy to commit access device fraud) as charged in Count One of this Information, knowing that such means of identification belonged to an actual person.

| COUNT | APPROXIMATE DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| TWO | November 10, 2021 | The Social Security number and name of T.S. |

In violation of 18 U.S.C. §§ 1028A and 2.

**FORFEITURE**

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(B).

2. Upon conviction of a conspiracy to violate 18 U.S.C. § 1029, in violation of 18 U.S.C. 371, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as a result of such violation, and pursuant to 18 U.S.C. § 1029(c)(1)(C), any personal property used or intended to be used to commit the offense.

3. If any of the property described above, as a result of any acts or omissions of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property, which cannot

be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(1) and 1029(c)(2).

GREGORY W. KEHOE
United States Attorney

By: [signature]
JOHN CANNIZZARO
Assistant United States Attorney

By: [signature]
MICHAEL J. COOLICAN
Assistant United States Attorney
Chief, Jacksonville Division